**Paul SMITH, Petitioner,**

v.

**Joel PETKOVICH, Warden, Respondent.**

**No. 1:06 CV 00467.**

United States District Court, N.D. Ohio, Eastern Division.

May 12, 2008.

---

## MEMORANDUM OPINION AND ORDER

LESLEY WELLS, District Judge.

On 1 March 2006, Petitioner Paul Smith ("Mr.Smith") filed this timely habeas, pursuant to 29 U.S.C. § 2254, setting forth the following three grounds for relief:

A. Ground one: Mr. Smith was denied his right to confrontation of witnesses under the Sixth Amendment because the trial court permitted testimony about the out-of-court statements of a non-testifying person.

B. Ground two: Mr. Smith received a ten-year sentencing enhancement as a Repeat violent Offender pursuant to O.R.C. 2929.14 and 2941.145, which are violative of the Sixth Amendment because they permit imposition of a sentence beyond the normal statutory maximum on the basis of findings made b y a trial judge alone and not submitted to a jury to be proven beyond a reasonable doubt; moreover the trial court denied Mr. Smith due process under the Fourteenth Amendment because the trial court did not make the findings required by the statute, nor was there sufficient evidence to support the findings in any event.

C. Ground three: Mr. Smith was denied his right to due process and trial by jury when the prosecutor argued beyond the evidence in closing argument, made personal attacks on defense counsel, and improperly commented on the Defendant's failure to present evidence at trial. (Doc. 1). Respondent filed a return of writ on 1 June 2006 (Doc. 7), and the matter was assigned to Magistrate Judge Patricia Hemann for a Report and Recommendation ("R & R").

In her careful and thorough R & R, Magistrate. Hemann recommends the Court: grant Mr. Smith's petition with respect to the claim in his second ground for relief that his independent, nine-year sentence, as a repeat offender pursuant to § 2929.14(D)(2), was contrary to clearly established federal law; overturn Mr. Smith's nine-year sentence as a repeat violent offender, giving the state the option of a new sentencing trial; and, overrule all other assignments of error. (Doc. 8, pp. 38–39).

Respondent filed objections to Magistrate Hemann's recommendation on 31 July 2006, arguing first, that no constitutional error occurred in the trial Court's judicial fact-finding pursuant to § 2929.14 because federal law was not clearly established. (Doc. 10). Further, the Respondent maintains the error was harmless. *Id.* On 30 January 2007, the Respondent also submitted an updated authority— *Shafer v. Wilson*, 2007 WL 315760 (N.D.Ohio Jan.30 2007)—in support of its position that a *Blakely* error is harmless in light of the Ohio Supreme Court decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006). (Doc. 11).

As no objections have been raised to the remainder of the R & R, the Court must assume that the parties are satisfied with all aspects of the R & R but the *Blakely* error contained in the repeat violent offender sentence. Any review by this Court, beyond the *Blakely* error dispute, would be a duplicative and inefficient use of the Court's limited resources. *Thomas*

*v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health and Human Services,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides, "[t]he judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

For the reasons set forth below, the Court adopts in its entirety Magistrate Judge Hemann's recommendations.

## BACKGROUND

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the R & R to which the parties have made an objection. 28 U.S.C. § 636(b)(1). Moreover, the factual findings of a state court are presumed to be correct. A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous. 28 U.S.C. § 2254(e)(1).

The Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio delineated the facts of this case on direct appeal.[1] Because Mr. Smith has not rebutted these factual findings by clear and convincing evidence, the Court presumes they are correct and, accordingly, recites the following facts:

On November 19, 1996, defendant and co-defendant Iris Wilson were indicted for felonious assault with firearm specifications pursuant to R.C. 2941.141 and 2941.145. The state additionally charged defendant with repeat violent offender specifications pursuant to R.C. 2929.01(EE) which alleged that he had been convicted of aggravated battery in Florida in 1988 and 1989.

The matter proceeded to trial in December 1996. Within this proceeding, the state dismissed the firearm specification pursuant to R.C. 2941.141, and also dismissed its case against Iris Wilson. Defendant was eventually convicted of felonious assault and the remaining firearm specification, and this court affirmed the conviction in *State v. Smith* (June 18, 1998), Cuyahoga App. No. 72089. The Supreme Court of Ohio denied defendant leave for further appeal. The Supreme Court of the United States granted certiorari, however, and remanded the matter back to this court for further consideration in light of *Lilly v. Virginia* (1999), 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). This court affirmed defendant's conviction upon further consideration. *See State v. Smith* (Dec. 9, 1999), Cuyahoga App. No. 72089.

On September 13, 2002, the United States District Court for the Northern District of Ohio, Eastern Division, granted defendant's petition for habeas corpus, concluding that prejudicial error occurred in connection with the admission of Iris Wilson's written statement.

The state's retrial of this matter commenced on January 6, 2003, before a jury. At this time, the state and defense counsel stipulated that the repeat

---

**1.** The state appellate court heard Mr. Smith's direct appeal of his second conviction. Mr. Smith's first conviction, on 27 January 1997, was overturned and a new trial was ordered when the federal district court, in response to Mr. Smith's first writ of habeas corpus on 5 December 2001, found that the admission of a key witnesses' statement violated the Petitioner's rights under the Confrontation Clause and that the violation was not harmless error. *See Smith v. Wilson,* 231 F.Supp.2d 650 (N.D.Ohio 2002).

violent offender specifications would be bifurcated and tried to the court.

The state presented the testimony of Kenyatta Wells, and Cleveland Police Officers Kennedy Jones, Xavier Lynch, Robert Minor, Thomas Lucey, Kevin Freeman, and Thomas Wheeler.

Kenyatta Wells testified that on August 1, 1996, he was with Mock Rodgers, a.k.a "Bootsie," and Chantell Jones at a recording studio located at East 55th Street and Marginal Road. They went to the Calypso Bar to get something to eat. As they were returning to the studio in Rodgers' green pickup truck, they stopped at a light on DuPont Avenue. A black, four-door vehicle pulled up and the woman driving the car said, "Hey Bootsie, somebody wants to holler at you." Wells, the driver of Rodgers' pickup, proceeded to the next light. At this point, the same car approached a second time, and the female driver repeated, "Hey Bootsie, somebody wants to holler at you." The passenger then got out of the black car and ran over to the passenger side of the pickup truck. He said, "What's up, mother f* * * * *," then placed his hand into the truck and started shooting. Wells drove off and the black vehicle followed.

Wells testified that, as they sped away, Rodgers screamed, "I am hit, I am hit," and identified the assailants as Paul and Iris. Wells drove the truck to the Finast Supermarket located at Superior and Lakeview. Wells realized that he had been shot in the leg, and was taken away by ambulance before speaking with police. Rodgers and Jones did speak with the police, however. Wells further testified that he spent four days in the hospital. Thereafter, on August 9, 1996, he and Rodgers went to the police station and Wells made a statement which provided in relevant part as follows:

"I was stopped by the traffic light in the center lane. At this moment the black Park Avenue 4 dr. pulled up on the right of the truck[.] At this moment the female by the name of Iris rolled down her window and stated that someone wanted to talk to Bootsy (sic). I then asked Bootsy (sic) if he knew who the female was as I was pulling the vehicle up. The car then pulled up some more and the female driver stated again that someone wanted to talk to him. He then notice (sic) that the driver was the female name (sic) Iris. At this moment someone exit (sic) the auto on the passenger side and started to walk up on the passenger side of the truck and stated, "What's up mother f* * * * *" and then started to shoot into the truck. At this moment my friends started saying take off take off. I then drove off going to the Finast Store located at Lakeview and Superior."

"Q–Do you know who the shooter is?"

"A–Yes, Paul Smith."

Wells identified defendant in court. He testified that he had seen defendant many times at Rodgers' house, that he was present when defendant and Rodgers' discussed business matters concerning their real estate dealings, and that he was aware of problems between the two men. He further testified that he knew Iris, the driver of the black car, through the father of her baby.

On cross-examination, Wells acknowledged that in the initial portion of his statement, he said that "someone" shot him. He also claimed that in his previous testimony, he had mistakenly said that he did not know Iris and had never seen her before. He also stated that he could not recall his previous testimony in which he indicated that he did not recognize Iris and Paul after the shoot-

ing and that Rodgers told him the identity of the assailants. Cleveland Police Officer Xavier Lynch testified that he was working as a security guard at the Finast Supermarket located at 11906 Superior in Cleveland when Wells, Rodgers and a female rushed in and exclaimed that Wells had been shot. Officer Lynch called for police and EMS to come to the store. Rodgers wanted to get away from the front of the store with its glass windows and said, "The guy is going to kill me." After the police arrived, however, he provided the police with the name of the assailant, and a description of him. He also reported that he was with a woman named Iris and that they were driving a black Park Avenue.

Cleveland Police Officer Kennedy Jones testified that at 11:23 p.m., on August 1, 1996, he received a call to respond to the Finast Supermarket at East 119th Street and Superior. Wells had been transported to the hospital when Officer Jones arrived, but Chantell Jones and Rodgers said that a Jamaican named Paul shot Wells at East 110th Street near DuPont.

Robert Minor, formerly a crime scene investigator with the scientific investigative unit of the Cleveland Police Department, testified that he processed Rodgers' pickup truck for evidence. Minor photographed the inside and outside of the vehicle. After lifting a rag from the floor of the driver's seat, he observed blood spatter on the rug, and a hole in the floor mat. He also located a pellet on the floor of the driver's side and a spent shell casing on the floor of the passenger's side. Minor further testified that he observed a bullet hole in the exterior of the vehicle, on the passenger side, and the passenger's side window was shattered.

Thomas Lucey testified that in August 1996, he worked in the forensic laboratory unit of the Cleveland Police Department. And that he examined the spent bullet slug and copper bullet jacket, which were recovered in this matter. According to Lucey, the slug and the copper jacket both came from a .45 caliber weapon.

Cleveland Police Officer Kevin Freeman testified that, based upon information he received in this matter, he was looking for a black man named Paul, and his girlfriend named Iris Wilson. Freeman testified that he knew Wilson had been involved with Kenneth Potts and he stopped her near Potts' house. At this time, Wilson provided him with a driver's license with the name "Renee Davis." Freeman knew that this was not the correct name and Iris was later arrested.

Cleveland Police Detective Thomas Wheeler testified that he was assigned to do follow-up investigation in the matter. The initial reports of the incident indicated that the assailant was named "Paul," and did not list a last name. Later, on August 9, 1996, Wheeler met with Rodgers and Wells. Wells provided a narrative of what had happened and Wheeler typed it. Rodgers did not make a statement.

Following the presentation of the state's case, defendant rested.

The jury convicted defendant of felonious assault and the firearm specification, and the trial court set the repeat violent offender specifications for hearing on February 14, 2003. Defendant's trial counsel subsequently stipulated to the specifications and the trial court found defendant guilty of both repeat violent offender specifications.

On February 28, 2003, the court held a sentencing hearing and sentenced de-

fendant to consecutive terms of three years for the firearm specification, eight years for the felonious assault charge, and nine years for the remaining specifications.

*State v. Smith,* 2004 WL 1472081 (Ohio App.8th, July 1, 2004).

The trial court made the following findings during the course of the Petitioner's 28 February 2003 sentencing hearing:

Obviously, this Court now has heard the testimony of the—regarding the facts of this case twice, back in 1996, as well as most recently a month ago.

This Court has the pre-sentence investigative report, which indicates the defendant does have a criminal history dating back to '87, where he had an aggravated assault with a deadly weapon.

In 1988, he was charged and convicted of smuggling marijuana into a jail.

In 1989, he was convicted of aggravated assault, with a count of battery, in which the defendant had a homemade knife or shank that he used to cause injuries to another at a correctional institution in Florida.

Then, in 1993, he made his way to Cleveland and was indicted for forgery, with two counts of uttering, two counts of possession of criminal tools.

When this case was originally indicted, the defendant was further indicted for aggravated murder, in which two victims died. The witnesses were not available, and that trial could not have gone forward. That case was dismissed, although it's certainly subject to re-indictment.

Under 2929.14, I believe it's, (D)(2)(a), it states that if the Court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person, the Court shall impose the longest prison term from the range of terms authorized for the offense under Division A of the this section.

In this case, the defendant engaged in a car chase, pulled over not once but twice, and the second time he got out of his vehicle, approached the passenger's side of the victim's vehicle and fired several shots into the vehicle, one of which did strike the defendant.

Based on the facts of this case, as well as the pre-sentence investigative report, the Court believes that any sentence [illegible] would deviate from the prior sentence [illegible] inadequate to punish the offender and protect the public from future crime.

This was a serious case. There was a substantial risk of death. Physical harm was caused. It would be demeaning to the seriousness of the offense to hold otherwise.

With respect to the felonious assault, the Court is going to impose the maximum sentence of eight years, with the three-year firearm specification, which must be served prior to and consecutive to the eight-year sentence.

With respect to the repeat violent offender specification, the Court will impose a nine-year sentence, which will be served consecutive.

Tr. At 336–38.

On 21 May 2003 the Court docketed Mr. Smith's sentence of "three years on the firearm specification to be served prior to and consecutive with time of eight-years on the base charge and given nine-years on the repeat violent offender specification to be served consecutive to the sentence for a total confinement of twenty years."

## LAW AND ARGUMENT

### A. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act, ("AEDPA"),

Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 26, 1996) are controlling here as the instant petition was filed after the Act's effective date. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *See also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir.2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller,* 269 F.3d at 614 (quoting *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Meanwhile, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 1523. The Sixth Circuit holds that, even if a federal court could determine that a state court incorrectly applied federal law, the court still could not grant relief unless it also finds that the state court ruling was

unreasonable. *Simpson v. Jones,* 238 F.3d 399, 405 (6th Cir.2000).

### B. Consideration of Mr. Smith's *Blakely* claim.

The only question under consideration is whether the court imposed independent nine-year sentence on Mr. Smith as a repeat violent offender under O.R.C. §§ 2929.14 and 2929.12, was a *Blakely* violation because the sentencing court engaged in judicial fact-finding to impose the separate sentence.

■ The *Blakely* claim is clearly cognizable in this instance. The Sixth Circuit will not apply *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), retroactively to cases on collateral review. *See Humphress v. United States,* 398 F.3d 855, 860–63 (6th Cir.2005). Mr. Smith's conviction became final on direct review on 1 March 2005, after *Blakely* was decided.

■ Mr. Smith is entitled to habeas relief if his independent sentence as a repeat violent offender pursuant to R.C. §§ 2929.14(D)(2)(b) and 2929.12 was contrary to, or an unreasonable application of, clearly established federal law, as established by the United States Supreme Court. 28 U.S.C. § 2254(d). In *Blakely,* the United States Supreme Court held that a statutory sentencing scheme that allows a judge to enhance a sentence based on factual findings not found by a jury, admitted by the defendant, or reflected in the jury verdict is unconstitutional. *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531. As the Ohio Supreme Court determined in *Foster,* certain provisions of Ohio's sentencing guidelines—including R.C. § 2929.14(D)(2)(b)—permitted sentencing enhancements based on judicial fact-finding, and thus violate *Blakely.*[2]

---

**2.** Foster specifically observed that "because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require

judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the

As stated at the time of Mr. Smith's sentencing Section 2929.14(D)(2)(b) of the Ohio Revised Code allowed, that

(b) If the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section, the court may impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if the court finds that both of the following apply with respect to the prison terms imposed on the offender pursuant to division (D)(2)(a) of this section and, if applicable, divisions (D)(1) and (3) of this section:

(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(ii) The terms so imposed are demeaning to the seriousness of the offense because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

Once the trial court sentenced Mr. Smith to the maximum eight year sentence of imprisonment for felonious assault, it was then allowed to impose an independent additional sentence if the Petitioner was a repeat violent offender and if the court found pursuant to the factors in O.R.C. § 2929.12 that the defendant would be a likely recidivist and that the crime was unusually serious. At a hearing on 14 February 2003, Mr. Smith stipulated to the truth of the facts necessary to allow the court to find that he was a repeat violent offender.

However, to make the determination that the crime was more serious than normal, the judge had to find at least one of the following pursuant to § 2929.12(B):

(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

---

defendant before repeat-violent-offender and major-drug-offender penalty enhancements are imposed, they are unconstitutional". *Foster*, 109 Ohio St.3d at 25, 845 N.E.2d 470

(citing *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)).

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

The Magistrate Judge concluded that "[a]n additional sentence based on these judicial findings of fact is unequivocally barred by the holdings in *Apprendi.*" (Doc. 8, p. 33). In its objections, the Respondent maintains to the contrary, that "[i]n light of the uncertainty, confusion and conflicting opinions surrounding *Blakely* issues, the Court of Appeals decision simply cannot be considered an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States." (Doc. 10, p. 6).

The Court finds the Magistrate Judge has the better of the arguments. The holding in *Apprendi* established that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 489, 120 S.Ct. 2348. Mr. Smith received the statutory maximum of eight years for felonious assault. That the trial court then resorted to judicial fact-finding

to establish a separate additional sentence of nine years predicated on the Petitioner's repeat offender status and the assignment of the eight year statutory maximum for felonious assault, clearly marks the additional sentence as unconstitutional under *Apprendi.* Accordingly, Mr. Smith's independent nine-year sentence is contrary to clearly established federal law and he is entitled to habeas relief on the merits.

However, the respondent, further, argues that because the failure to submit a sentencing factor to the jury is not a "structural" error, *Washington v. Recuenco,* 548 U.S. 212, 126 S.Ct. 2546, 2551–53, 165 L.Ed.2d 466 (2006), the Petitioner's *Blakely* claim must be subject to harmless error analysis even if construed as a constitutional violation.

■ In this Circuit, Courts construe an error as harmless if "none of the defendant's substantial rights have been affected by the error." *United States v. Oliver,* 397 F.3d 369, 381 (6th Cir.2005). In the sentencing context under consideration here, the government bears the burden of demonstrating "with certainty that the error at sentencing did not 'cause[ ] the defendant to receive a more severe sentence.'" *Emrick v. Wolfe,* 2006 WL 3500005, at *2 (S.D.Ohio Dec.5, 2006) (*quoting Oliver,* 397 F.3d at 379). "[R]emand for an error at sentencing is required unless we are certain that any such error was harmless i.e. any such error 'did not affect the trial court's selection of the sentence imposed.'" *United States v. Hazelwood,* 398 F.3d 792, 801 (6th Cir.2005).

■ Federal district courts in Ohio have staked out two differing positions on the question of whether *Blakely* violations constitute harmless error in light of *Foster.* The Respondent's rely on the position enunciated in *Shafer v. Wilson,* 2007 WL 315760 (N.D.Ohio Jan.30 2007), finding a

*Blakely* error harmless in light of *Foster.* *See also Flannery v. Hudson,* 2008 WL 1787155 (N.D.Ohio, April 17, 2008); *Rettig v. Jefferys,* 2008 WL 1775255 (N.D.Ohio April 15, 2008). In order to bring several provisions of the Ohio sentencing guidelines within the ambit of *Booker* and *Blakely, Foster* severed several provisions, including 2929.14(D)(2)(b), declaring that "[a]fter the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender [ ] specifications." *Id.* at 29–30.

Due to *Foster's* position "that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences," the Court in *Shafer* concluded that the error was harmless because, upon re-sentencing, the trial Judge would have full discretion to re-sentence the petitioner to exactly the same sentence. *See Shafer,* 2007 WL 315760 at *11. In *Shafer* the trial court made judicial findings that the petitioner showed no remorse and abused a position of trust to arrive at a sentence above the presumptive minimum. In finding harmless error, the *Shafer* court reasoned:

> After the Ohio Supreme Court's decision in *State v. Foster,* sentencing judges are free to impose any sentence within the applicable statutory range without the need to make any specific judicial findings.... Stated otherwise, because Ohio remedied its unconstitutional sentencing regime by making its guidelines advisory, there is no reason to believe the Petitioner would receive a more favorable sentence if the Court grants his habeas request for relief. In light of the fact that the Supreme Court has held that Blakely violations are not "structural" errors that require automatic reversal, we therefore agree with Respondent

that no basis exists for granting the Petitioner's request for relief despite the fact that his re-sentencing clearly did violate Blakely.

*Id.*

Several courts have rejected *Shafer's* reasoning regarding harmless error. *See Cvijetinovic v. Eberlin,* 2008 WL 918576 (N.D.Ohio March 31, 2008); *Villagarcia v. Warden, Noble Correctional Inst.,* 2007 WL 1028528 (S.D.Ohio March 30, 2007); *Noland v. Hurley,* 523 F.Supp.2d 659 (S.D.Ohio 2007); *Perry v. Money,* 2007 WL 2236634 (N.D.Ohio July 31, 2007); *Crotts v. Bradshaw,* 2007 WL 3283841, at *17 (N.D.Ohio Oct.30, 2007). The Court in *Villagarcia* argued against the *Shafer* Court's position by reasoning that the harmless error standard cannot be satisfied by the mere speculation that an error could be harmless:

> The flaw in this reasoning is that it equates a possibility of no actual prejudice in terms of the eventual sentence received with an actuality of no prejudice resulting from a constitutional error.... [S]peculation that a judge might repeat his or her sentence without explicit factfinding does not render an error harmless as a certainty. The former scenario involves the realities of state law-either it affords an avenue to render the error harmless or it does not-while the latter presupposes a reality in which but one outcome is certain. But because more than one outcome is possible upon re-sentencing, basing harmlessness on assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of *always* harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a *certainty* that error is

harmless. *See United States v. Hazelwood,* 398 F.3d 792, 801 (6th Cir.2005) ("Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless").

*Villagarcia,* 2007 WL 1028528 at \*4 (emphasis included).

The Court finds the reasoning in *Villagarcia* persuasive. The acknowledged *Blakely* sentencing error cannot be construed as harmless if Mr. Smith could receive a lesser sentence absent unconstitutional judicial fact-finding. Accordingly, because Mr. Smith could receive a lesser sentence upon re-sentencing the Court finds the *Blakely* violation is not harmless error.

## CONCLUSION

The Court adopts and affirms Magistrate Judge Hemann's Report and Recommendation with respect to all three grounds of Mr. Smith's habeas petition and overrules the Respondent's objections. Accordingly, the Court grants Mr. Smith's petition only as it pertains to the claim in his second ground for relief that his nine-year sentence as a repeat offender pursuant to R.C. §§ 2929.14(D)(2) and 2929.12 was contrary to clearly established federal law.

The Court hereby vacates Mr. Smith's independent nine-year sentence as a repeat violent offender. The State of Ohio shall within ninety days elect to re-sentence Paul Smith with regard to the repeat violent offender portion of his sentence. Mr. Smith's remaining habeas grounds are dismissed.

IT IS SO ORDERED.

1. The last name appears in most documents as "Rodgers," and that is the spelling used in

## REPORT AND RECOMMENDATION

PATRICIA A. HEMANN, United States Magistrate Judge.

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Paul Smith's ("Smith") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on March 1, 2006. Smith is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio v. Smith,* Case no. CR 344957 (Cuyahoga County 1996). For the reasons set forth below, the magistrate judge recommends that the petition be granted in part.

### I

The August 1996 term of the Cuyahoga County grand jury indicted Smith on one count of felonious assault with two firearm specifications and two repeat offender specifications. The appellate court hearing Smith's appeal upon remand from the United States Supreme Court found the following relevant facts regarding Smith's arrest and initial conviction:

> The record reflects that during the day on August 1, 1996, Iris Wilson ["Wilson"] and Paul Smith, a Jamaican, drove around in an effort to collect a drug debt from "Bootsie," a.k.a. Mock Rogers ["Rodgers"];[1] later that evening, Smith saw Rogers, Kenyatta Wells ["Wells"], and Shantell Jones leave the Calypso Bar, located at Lakeshore and St. Clair Avenue, in Cleveland. As they drove off in Wells' pickup truck, Smith told Wilson to follow them, and when Wells reached the intersection of Lakeview Avenue and DuPont, Wilson yelled to Bootsie. Wells drove on, but when he

this Report and Recommendation.

reached the next light, Wilson again yelled, "Bootsie, somebody wants to see you," and at that point, Smith exited the car, walked over to the passenger side of Wells' truck, shot out the window, put his hand into the vehicle, and shot Wells in the right calf. Rogers, believing he had been shot, told Wells, "I am hit! I am hit! It was Iris and Paul."

Wells then drove to a nearby Finast grocery store, where a security guard called police and an ambulance to transport Wells to the hospital. Officer Kennedy Jones of the Sixth District Police Department arrived at the Finast store, observed bullet holes in the vehicle, spoke with Rogers and Shantell Jones, who appeared to be visibly shaken, and through that conversation, learned the identities of Smith and Wilson.

Following an investigation, police arrested Wilson and Smith, and the grand jury returned indictments against both for felonious assault in connection with the shooting of Wells. While in custody and after she had an opportunity to speak with her defense attorney who advised her not to make a written statement, Wilson signed a waiver of her rights and gave a written statement to the police which detailed that she drove Smith from Calypso's where he first spotted Rogers to East 110 th and Lakeview. She further related that Smith then exited the car and started shooting into Wells' truck. Smith got back into the vehicle and told Wilson to drive.

. . .

At trial and after the jury had been seated but prior to opening statements of counsel, the court ruled that Wilson's statement would not be admitted and, in response, the state dismissed its case against her and proceeded with its case against Smith. During its case-in-chief, the state called three witnesses, including Wells, who recounted the events of August 1, 1995, identified Smith as the gunman, and testified that Rogers had told him that Smith did the shooting just after it had occurred. The state next called Wilson, who invoked her Fifth Amendment right against self-incrimination and refused to testify even after the state granted her transactional immunity because she feared federal prosecution for harboring Smith, an illegal alien. The state then offered, and the court admitted, the written statement Wilson had given to the police in which she stated that Smith shot Wells. The state then called Officer Jones who had observed the bullet holes inside of Wells' truck and who had spoken with Rogers and Jones within 30 minutes of the shooting. He testified to the suspects' identities, which the court admitted under the excited utterance exception to the hearsay evidence rule. Following deliberation, the jury returned a verdict finding Smith guilty of felonious assault. *State v. Smith*, 1999 WL 1129070 (Ohio App. Dec. 9, 1999). The jury found Smith guilty of felonious assault. On January 27, 1997 the court sentenced Smith to eight years imprisonment for felonious assault and to prior and consecutive sentences of three years for firearm specifications and nine years for repeat offender specifications.

*A. Direct appeal from first conviction*

Smith timely filed a notice of appeal. Among the five assignments of error Smith raised on appeal was his assertion that the court violated his right to confront the witnesses against him when it admitted a written statement from Wilson after Wilson refused to testify in court on the grounds that her testimony might incriminate her. On August 21, 1998 the appellate court overruled Smith's assignments of error and affirmed the judgment of the

trial court. The court held in particular that Wilson's statement was properly admitted as evidence against Smith pursuant to the exception to the prohibition against hearsay at Ohio Evid. R. 804(B)(3), admission of a statement against interest. *State v. Smith,* 1998 WL 323545, at \*4 (Ohio App. June 18, 1998). The court reached this conclusion because it found that Wilson was unavailable to give testimony at the time of trial, the statement was against her interest because it tended to expose her to criminal liability, and corroborating circumstances indicated the statement's trustworthiness. *Id.* at \*\*4–5.

On October 5, 1998 Smith filed a notice of appeal with the Ohio Supreme Court. Smith raised two propositions of law in his memorandum in support of jurisdiction, including his contention that the admission of Wilson's written statement violated his right of confrontation. On December 23, 1998 the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.

Smith timely petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court granted his petition on June 21, 1999, vacating the judgment of the Ohio appellate court and remanding the case for further consideration in light of *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). *Lilly* held that the statement of an accomplice implicating an accused was not within a firmly rooted exception to the hearsay rule and could not be admitted unless accompanied by particular indicia of reliability. On December 20, 1999 the appellate court concluded "that the admission of Wilson's written statement in this case constitutes harmless error beyond a reasonable doubt." *Id.* at \*\*7–8.

On April 24, 2000 Smith moved in the Ohio Supreme Court for a delayed appeal of the appellate court's decision. The Ohio Supreme Court granted Smith's motion on May 31, 2000. In his memorandum in support of jurisdiction, Smith asserted two propositions of law:

**Proposition Of Law No. I:** Where the court admitted as substantive proof of guilt, considerable evidence which offended the accused's right of confrontation and which was clearly hearsay, it is a due process violation to regard the admission of such evidence as harmless.

**Proposition Of Law No. II:** Given that the United States Supreme Court unanimously held that a blame-shifting statement (made by one said to be an accomplice) is a prime example of unreliable hearsay which the confrontation clause prohibits (absent any opportunity for cross-examination), to the extent the flawed notions expressed by the Court of Appeals (in its original Opinion following remand) are thought to survive *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), such a view cannot withstand meaningful scrutiny.

(Capitalization in the original.) The Ohio Supreme Court dismissed Smith's appeal as not involving any substantial constitutional question on September 2, 2000.

### B. Petition for postconviction relief

On September 4, 1998 Smith moved in the trial court for postconviction relief. Smith asserted two grounds for relief in his petition, ineffective assistance of trial counsel and denial of due process in sentencing. On December 8, 1998 the trial court denied Smith's petition because it was untimely filed and because Smith failed to present any compelling reason to waive the filing deadline. Smith timely appealed the denial of his petition for postconviction relief, and on February 28, 2000 the appellate court affirmed the judgment of the trial court. A timely appeal to the Ohio Supreme Court resulted in that

court's dismissal of Smith's appeal as not involving any substantial constitutional question on June 14, 2000.

### C. Application for reopening

On November 19, 1998 Smith filed in the appellate court an application for reopening his direct appeal pursuant to Ohio App. R. 26(B). In his application, Smith argued that appellate counsel had been ineffective in not arguing that Smith was denied due process when the trial court imposed the maximum sentence for felonious assault because Smith was a "repeat violent offender." On January 3, 2000 the court overruled Smith's assignment of error and affirmed the judgment of the trial court. Smith timely appealed to the Ohio Supreme Court, and on May 3, 2000 that court dismissed Smith's appeal as not involving any substantial constitutional question.

### D. Petition for a federal writ of habeas corpus

Smith filed a petition for a federal writ of habeas corpus in this court on December 5, 2001. Smith raised five grounds for relief, including his claim that admission of Wilson's written statement violated his right of confrontation. On September 13, 2002 the district court granted Smith's petition, finding that admission of Wilson's statement violated the Confrontation Clause and that this was not harmless error. *Smith v. Wilson,* 231 F.Supp.2d 650 (N.D.Ohio 2002). The court ordered the State of Ohio to retry Smith within 120 days or it would entertain a petition from Smith for his unconditional release.

### E. Second conviction

Smith's second trial began on January 6, 2003. The state appellate court hearing Smith's direct appeal of his second conviction found the following relevant facts regarding his trial, conviction, and post-trial hearing:

The state's retrial of this matter commenced on January 6, 2003, before a jury. At this time, the state and defense counsel stipulated that the repeat violent offender specifications would be bifurcated and tried to the court.

The state presented the testimony of Kenyatta Wells, and Cleveland Police Officers Kennedy Jones, Xavier Lynch, Robert Minor, Thomas Lucey, Kevin Freeman, and Thomas Wheeler.

Kenyatta Wells testified that on August 1, 1996, he was with Mock Rodgers, a.k.a "Bootsie," and Chantell Jones at a recording studio located at East 55th Street and Marginal Road. They went to the Calypso Bar to get something to eat. As they were returning to the studio in Rodgers' green pickup truck, they stopped at a light on DuPont Avenue. A black, four-door vehicle pulled up and the woman driving the car said, "Hey Bootsie, somebody wants to holler at you." Wells, the driver of Rodgers' pickup, proceeded to the next light. At this point, the same car approached a second time, and the female driver repeated, "Hey Bootsie, somebody wants to holler at you." The passenger then got out of the black car and ran over to the passenger side of the pickup truck. He said, "What's up, mother f* * * * *," then placed his hand into the truck and started shooting. Wells drove off and the black vehicle followed.

Wells testified that, as they sped away, Rodgers screamed, "I am hit, I am hit," and identified the assailants as Paul and Iris. Wells drove the truck to the Finast Supermarket located at Superior and Lakeview. Wells realized that he had been shot in the leg, and was taken away by ambulance before speaking with police. Rodgers and Jones did

speak with the police, however. Wells further testified that he spent four days in the hospital. Thereafter, on August 9, 1996, he and Rodgers went to the police station and Wells made a statement which provided in relevant part as follows:

"I was stopped by the traffic light in the center lane. At this moment the black Park Avenue 4 dr. pulled up on the right of the truck[.] At this moment the female by the name of Iris rolled down her window and stated that someone wanted to talk to Bootsy (sic). I then asked Bootsy (sic) if he knew who the female was as I was pulling the vehicle up. The car then pulled up some more and the female driver stated again that someone wanted to talk to him. He then notice (sic) that the driver was the female name (sic) Iris. At this moment someone exit (sic) the auto on the passenger side and started to walk up on the passenger side of the truck and stated, "What's up mother f* * * * *" and then started to shoot into the truck. At this moment my friends started saying take off take off. I then drove off going to the Finast Store located at Lakeview and Superior."

"Q—Do you know who the shooter is?"

"A—Yes, Paul Smith."

Wells identified defendant in court. He testified that he had seen defendant many times at Rodgers' house, that he was present when defendant and Rodgers' discussed business matters concerning their real estate dealings, and that he was aware of problems between the two men. He further testified that he knew Iris, the driver of the black car, through the father of her baby.

On cross-examination, Wells acknowledged that in the initial portion of his statement, he said that "someone" shot him. He also claimed that in his previous testimony, he had mistakenly said that he did not know Iris and had never seen her before. He also stated that he could not recall his previous testimony in which he indicated that he did not recognize Iris and Paul after the shooting and that Rodgers told him the identity of the assailants. Cleveland Police Officer Xavier Lynch testified that he was working as a security guard at the Finast Supermarket located at 11906 Superior in Cleveland when Wells, Rodgers and a female rushed in and exclaimed that Wells had been shot. Officer Lynch called for police and EMS to come to the store. Rodgers wanted to get away from the front of the store with its glass windows and said, "The guy is going to kill me." After the police arrived, however, he provided the police with the name of the assailant, and a description of him. He also reported that he was with a woman named Iris and that they were driving a black Park Avenue.

Cleveland Police Officer Kennedy Jones testified that at 11:23 p.m., on August 1, 1996, he received a call to respond to the Finast Supermarket at East 119th Street and Superior. Wells had been transported to the hospital when Officer Jones arrived, but Chantell Jones and Rodgers said that a Jamaican named Paul shot Wells at East 110th Street near DuPont.

Robert Minor, formerly a crime scene investigator with the scientific investigative unit of the Cleveland Police Department, testified that he processed Rodgers' pickup truck for evidence. Minor photographed the inside and outside of the vehicle. After lifting a rag from the floor of the driver's seat, he observed blood spatter on the rug, and a hole in the floor mat. He also located a pellet

on the floor of the driver's side and a spent shell casing on the floor of the passenger's side. Minor further testified that he observed a bullet hole in the exterior of the vehicle, on the passenger side, and the passenger's side window was shattered.

Thomas Lucey testified that in August 1996, he worked in the forensic laboratory unit of the Cleveland Police Department. And that he examined the spent bullet slug and copper bullet jacket, which were recovered in this matter. According to Lucey, the slug and the copper jacket both came from a .45 caliber weapon.

Cleveland Police Officer Kevin Freeman testified that, based upon information he received in this matter, he was looking for a black man named Paul, and his girlfriend named Iris Wilson. Freeman testified that he knew Wilson had been involved with Kenneth Potts and he stopped her near Potts' house. At this time, Wilson provided him with a driver's license with the name "Renee Davis." Freeman knew that this was not the correct name and Iris was later arrested.

Cleveland Police Detective Thomas Wheeler testified that he was assigned to do follow-up investigation in the matter. The initial reports of the incident indicated that the assailant was named "Paul," and did not list a last name. Later, on August 9, 1996, Wheeler met with Rodgers and Wells. Wells provided a narrative of what had happened and Wheeler typed it. Rodgers did not make a statement.

Following the presentation of the state's case, defendant rested.

The jury convicted defendant of felonious assault and the firearm specification,[2] and the trial court set the repeat violent offender specifications for hearing on February 14, 2003. Defendant's trial counsel subsequently stipulated to the specifications and the trial court found defendant guilty of both repeat violent offender specifications.

*State v. Smith,* 2004 WL 1472081 (Ohio App. July 1, 2004).

The court held a sentencing hearing on February 28, 2003. During the hearing, the court made the following findings and determinations:

Obviously, this Court now has heard the testimony of the—regarding the facts of this case twice, back in 1996, as well as most recently a month ago.

This Court has the pre-sentence investigative report, which indicates the defendant does have a criminal history dating back to '87, where he had an aggravated assault with a deadly weapon.

In 1988, he was charged and convicted of smuggling marijuana into a jail.

In 1989, he was convicted of aggravated assault, with a count of battery, in which the defendant had a homemade knife or shank that he used to cause injuries to another at a correctional institution in Florida.

Then, in 1993, he made his way to Cleveland and was indicted for forgery, with two counts of uttering, two counts of possession of criminal tools.

When this case was originally indicted, the defendant was further indicted for aggravated murder, in which two victims died. The witnesses were not

**2.** In Ohio felonious assault is a felony of the second degree. The jury specifically found in accord with the accompanying specification that Smith had a firearm on or about his person or under his control while committing the offense, displayed and brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

available, and that trial could not have gone forward. That case was dismissed, although it's certainly subject to re-indictment.

Under 2929.14, I believe it's, (D)(2)(a), it states that if the Court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person, the Court shall impose the longest prison term from the range of terms authorized for the offense under Division A of this section.

In this case, the defendant engaged in a car chase, pulled over not once but twice, and the second time he got out of his vehicle, approached the passenger's side of the victim's vehicle and fired several shots into the vehicle, one of which did strike the defendant.

Based on the facts of this case, as well as the pre-sentence investigative report, the Court believes that any sentence [illegible] would deviate from the prior sentence [illegible] inadequate to punish the offender and protect the public from future crime.

This was a serious case. There was a substantial risk of death. Physical harm was caused. It would be demeaning to the seriousness of the offense to hold otherwise.

With respect to the felonious assault, the Court is going to impose the maximum sentence of eight years, with the three-year firearm specification, which must be served prior to and consecutive to the eight-year sentence.

With respect to the repeat violent offender specification, the Court will impose a nine-year sentence, which will be served consecutive.

Tr. at 336–38. On May 21, 2003 the court docketed the following journal entry:

DEFENDANT IN COURT WITH COUNSEL JAMES WILLIS. ON A FORMER DAY OF COURT DEFENDANT WAS FOUND GUILTY BY A JURY OF FELONIOUS ASSAULT WITH A 3 YEAR FIREARM SPECIFICATION ORC 2903.11 F–2 (SB2) AS CHARGED IN THE INDICTMENT. THE COURT FOUND DEFENDANT GUILTY OF 2 REPEAT VIOLENT OFFENDER SPECIFICATIONS.

DEFENDANT AND PROSECUTOR MICHAEL HORN ADDRESS THE COURT.

THE COURT CONSIDERED ALL OF THE REQUIRED FACTORS OF THE LAW.

THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSES OF R.C. 2929.11.

THE COURT IMPOSES A PRISON TERM AT LORAIN CORRECTIONAL INSTITUTION OF 3 YEARS ON THE FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH TIME OF 8 YEARS ON THE BASE CHARGE AND GIVEN 9 YEARS ON THE REPEAT VIOLENT OFFENDER SPECIFICATION TO BE SERVED CONSECUTIVE TO THE SENTENCE FOR A TOTAL CONFINEMENT OF 20 YEARS.

Smith's sentence also included post-release control and court costs.

### F. Second direct appeal

Smith timely filed a notice of appeal in the state appellate court. In support of his appeal Smith raised nine assignments of error:

ASSIGNMENT OF ERROR I:

THE TRIAL COURT ERRED IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTI-

TUTION, AND EVIDENCE RULES 801 AND 802 WHEN IT PERMITTED WITNESS WELLS TO TESTIFY ABOUT WHAT HE LEARNED IN CONVERSATIONS WITH NON-WITNESS RODGERS.

ASSIGNMENT OF ERROR II:

THE TRIAL COURT ERRED WHEN IT ADMITTED TESTIMONY THAT IRIS WILSON AND MR. SMITH WERE ROMANTICALLY INVOLVED, THAT ONE OF IRIS WILSON'S "BOYFRIENDS" HAD A CRIMINAL HISTORY AND THAT IRIS WILSON PRESENTED A FALSE DRIVER'S LICENSE.

ASSIGNMENT OF ERROR III:

THE TRIAL COURT ERRED BY FAILING TO COMPREHENSIVELY INSTRUCT THE JURY FOLLOWING CLOSING ARGUMENTS.

ASSIGNMENT OF ERROR IV:

THE FAILURE TO INCLUDE WRITTEN JURY INSTRUCTIONS IN THE RECORD DEPRIVED MR. SMITH OF HIS RIGHT TO DUE PROCESS BY IMPAIRING HIS RIGHT TO AN EFFECTIVE FIRST APPEAL[ ] AS OF RIGHT.

ASSIGNMENT OF ERROR V:

THE PROSECUTION VIOLATED MR. SMITH'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT ENGAGED IN IMPROPER CLOSING ARGUMENT THAT COMMENTED UPON THE DEFENDANT'S FAILURE TO PRESENT A DEFENSE AND WAS DESIGNED TO APPEAL TO THE PASSIONS OF THE JURY.

ASSIGNMENT OF ERROR VI:

THE TRIAL COURT IMPROPERLY SENTENCED MR. SMITH TO ADDITIONAL TERMS OF IMPRISONMENT AS A REPEAT VIOLENT OFFENDER.

ASSIGNMENT OF ERROR VII:

THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE FOR THE CRIME OF FELONIOUS ASSAULT.

ASSIGNMENT OF ERROR VIII:

MR. SMITH WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ASSIGNMENT OF ERROR IX:

THE TRIAL COURT ERRED WHEN IT IMPOSED A TWENTY YEAR SENTENCE WITHOUT DETERMINING THAT AN ADEQUATE FACTUAL BASIS EXISTED TO ENSURE THAT THE SENTENCE IMPOSED WAS CONSISTENT WITH THAT IMPOSED UPON SIMILARLY SITUATED OFFENDERS COMMITTING SIMILAR OFFENSES.

On July 16, 2004 the state appellate court found Smith's assignments of error to be without merit and affirmed the judgment and sentence of the trial court.

Smith timely appealed the judgment of the state appellate court to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Smith advanced five propositions of law:

Proposition of Law I:

R.C. 2929.14(D)(2)'s provision that requires trial courts to impose maximum sentences upon certain repeat violent offenders, and that allows trial courts to impose upon certain repeat violent offenders 1 to 10 years of additional imprisonment in excess of the statutory maximum otherwise provided for the underlying offense, violates the Sixth Amendment to the United States Constitution by conditioning such sentences upon findings made by the trial judge and not by the jury.

Proposition of Law II:

In order to impose a sentence in excess of the statutory maximum on a repeat violent offender, there must be present at least one of the enumerated factors which R.C. 2929.12 specifically recognizes as making the offender's conduct more serious than conduct normally constituting the offense.

Proposition of Law III:

A trial court must ensure that its sentence if proportionate to sentences being imposed upon similarly situated offenders committing similar offenses.

Proposition of Law IV:

It is a violation of the Sixth Amendment right to confront witnesses as well as a violation of Ohio hearsay law, for a witness to testify about what he learned in conversations with non-witnesses, regardless of whether the testifying witness actually relates the non-witness' statements.

Proposition of Law V:

It is improper for the prosecution in closing argument to comment upon the defendant's failure to present a defense, to characterize defense counsel as being less objective than the prosecution, and to appeal to the passions of the jury.

(Punctuation in the original.) On December 1, 2004 the Ohio Supreme Court declined jurisdiction and dismissed Smith's appeal as not involving a substantial constitutional question.

## G. Second petition for a federal writ of habeas corpus

On March 1, 2006, Smith filed in this court a second petition for a writ of habeas corpus. Smith asserts three grounds for relief in his petition:

A. Ground one: Mr. Smith was denied his right to confrontation of witnesses under the Sixth Amendment because the trial court permitted testimony about the out-of-court statements of a non-testifying person.

B. Ground two: Mr. Smith received a ten-year sentencing enhancement as a Repeat Violent Offender pursuant to O.R.C. 2929.14 and 2941.145, which are violative of the Sixth Amendment because they permit imposition of a sentence beyond the normal statutory maximum on the basis of findings made by a trial judge alone and not submitted to a jury to be proven beyond a reasonable doubt; moreover the trial court denied Mr. Smith due process under the Fourteenth Amendment because the trial court did not make the findings required by the statute, nor was there sufficient evidence to support the findings in any event.

C. Ground three: Mr. Smith was denied his right to due process and trial by jury when the prosecutor argued beyond the evidence in closing argument, made personal attacks on defense counsel, and improperly commented on the Defendant's failure to present evidence at trial.

Respondent filed a Return of Writ on June 1, 2006 ("Return"; Docket # 7). Thus, the petition is ready for decision.

## II

### A. Jurisdiction

Smith was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio. Smith filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.... Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d). This court has jurisdiction over Smith's claims.

### B. Exhaustion of state remedies

■ Prior to seeking review of conviction by federal habeas corpus, a state prisoner must exhaust all possible state remedies or have no remaining state remedies. 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994). A state has not "waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217

F.3d 421, 423–24 (6th Cir.2000) (citing 28 U.S.C. § 2254(b)(3)).

■ A petitioner must fairly present any claims to the state courts in a federal constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir.1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275, 92 S.Ct. 509; *see also Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir.1986). If a petitioner has no remaining state remedies but has failed to present all claims to the highest state court in a federal constitutional context, then petitioner's state remedies are exhausted but petitioner has procedurally defaulted the claims. *See Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir.1996); *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir.1995).

Smith has exhausted direct appeal for all his claims. No state procedures for relief remain available to him for any of his claims. Because Smith has no remaining state remedies for his claims, his state claims are exhausted.

### B. Procedural default

■ Procedural default occurs when a petitioner has exhausted his state remedies but has failed to present fairly his constitutional claims to the highest state court in a federal constitutional context. *Anderson*, 459 U.S. at 4, 103 S.Ct. 276; *Picard*, 404 U.S. at 270, 92 S.Ct. 509. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law ... not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72,

87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "The miscarriage of justice exception is concerned with actual as compared to legal innocence." *Byrd v. Collins,* 209 F.3d 486, 521 n. 34 (6th Cir.2000) (quoting *Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)).

Respondent does not argue that Smith has procedurally defaulted any of his grounds for relief. The court will, therefore, consider the merits of Smith's three grounds for relief.

### III

A federal court is strictly constrained as to when it may grant a writ of habeas corpus to a petitioner in custody pursuant to a state court judgment when the petitioner's claim was adjudicated on the merits in state court. Title 28 U.S.C. § 2254(d) provides that a federal court may not grant a petition for a writ of habeas corpus unless the state adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is based on an "unreasonable determination" of the facts only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the particular state prisoner's case," *Williams,* 529 U.S. at 413, 120 S.Ct. 1495, or if the state court "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Campbell v. Coyle,* 260 F.3d 531, 539 (6th Cir.2001).

A federal court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams* at 411, 120 S.Ct. 1495. Moreover, a federal court must presume that a state court's determination of factual issues is correct. A petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The magistrate judge will consider Smith's claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

*A. Whether Wells' testimony regarding money trouble between Smith and Rodgers violated Smith's Sixth Amendment right to confront witnesses against him*

Smith argues that the trail court's admission of Wells' testimony regarding

money trouble between Smith and Rodgers denied his right to confront witnesses against him in violation of the Sixth Amendment. Respondent denies that admission of the testimony violated Smith's Sixth Amendment rights.

The confrontation clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right applies to federal and state defendants. *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

 Courts use a two-pronged test for determining whether a declarant's out-of-court statement is admissible or prohibited by the Sixth Amendment's confrontation clause:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be ex-

cluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[3] "[A] witness is not 'unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Id.* at 74, 100 S.Ct. 2531 (quoting *Barber v. Page*, 390 U.S. 719, 724–725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (emphasis added by the quoting court)).[4] The prosecution bears the burden of proving that reasonable, good-faith efforts were made to procure a witness when there is even a remote possibility that such efforts might be successful. *Roberts*, 448 U.S. at 74–75, 100 S.Ct. 2531. Particularized guarantees of trustworthiness must "be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright*, 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). " '[E]vidence corroborating the truth of a hearsay statement' is irrelevant to a finding of trustworthiness". *Dorchy*, 398 F.3d at 788 (quoting *Wright*, 497 U.S. at 822, 110 S.Ct. 3139).[5]

---

3. The requirement of "indicia of reliability" was abrogated with respect to testimonial statements by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (holding that testimonial out-of-court statements by witnesses are inadmissible under the confrontation clause, unless declarant is unavailable and defendant had a prior opportunity to cross-examine the declarant). "[W]ith respect to non-testimonial hearsay statements, *Roberts* and its progeny remain the controlling precedents." *United States v. Franklin*, 415 F.3d 537, 546 (6th Cir.2005); *see also United States v. Gibson*, 409 F.3d 325, 338 (6th Cir.2005). Thus, *Crawford* does not apply here, and, in any case, it is not retroactive in its effect. *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir.2005).

4. In *United States v. Inadi*, 475 U.S. 387, 400, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the Supreme Court concluded that the unavailability rule was inapplicable to co-conspirator hearsay statements.

5. As the Supreme Court noted in *Crawford*:

> The legacy of *Roberts* in other courts vindicates the Framers' wisdom in rejecting a general reliability exception. The framework is so unpredictable that it fails to provide meaningful protection from even core confrontation violations.

> Reliability is an amorphous, if not entirely subjective, concept. There are countless factors bearing on whether a statement is reliable; the nine-factor balancing test applied by

■ Alleged violations of the confrontation clause are subject to harmless error review. *Bulls v. Jones*, 274 F.3d 329, 334 (6th Cir.2001). The appropriate standard for determining whether a violation was harmless is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Jordan v. Hurley*, 397 F.3d 360, 363–64 (6th Cir.2005) (quoting *Brecht v. Abrahamson* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). "Where the reviewing court is in 'grave doubt' as to whether the error was harmless, it should 'treat the error, not as if it were harmless, but as if it affected the verdict.'" *Madrigal v. Bagley*, 413 F.3d 548, 551 (6th Cir.2005) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)). Courts should consider certain factors in determining whether an error was harmless, including but not limited to the following:

> the importance of the … testimony in the prosecution's case, [2] whether the testimony was cumulative, [3] the presence … of evidence corroborating or contradicting the testimony of the witness on material points, [4] the extent of cross-examination otherwise permitted,

and … [5] the overall strength of the prosecution's case.

*Madrigal*, 413 F.3d at 551 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (numerals added by the quoting court)).

■ In the instant case the court overruled Smith's objections at the end of the following testimony by Wells, a business associate and friend of Rodgers:

Q. Were you aware of any problems that your friend, Mr. Rodgers, had with the defendant concerning his real estate deals?

A. Yes.

Q. All right. And what difficulties did they have?

MR. WILLIS: Objection, your Honor.

THE COURT: Sustained.

BY MR. HORN:

Q. Well, you were present when they would talk; is that correct?

A. Yes.

Q. All right. And Mr. Rodgers, would he talk to you about his business?

A. Yes.

---

the Court of Appeals below is representative. See, e.g., *People v. Farrell*, 34 P.3d 401, 406–407 (Colo.2001) (eight-factor test). Whether a statement is deemed reliable depends heavily on which factors the judge considers and how much weight he accords each of them. Some courts wind up attaching the same significance to opposite facts. For example, the Colorado Supreme Court held a statement more reliable because its inculpation of the defendant was "detailed," *id.,* at 407, while the Fourth Circuit found a statement more reliable because the portion implicating another was "fleeting," *United States v. Photogrammetric Data Servs., Inc.,* 259 F.3d 229, 245 (C.A.4 2001). The Virginia Court of Appeals found a statement more reliable because the witness was in custody and charged with a crime (thus making the statement more

obviously against her penal interest), see *Nowlin v. Commonwealth,* 40 Va.App. 327, 335–338, 579 S.E.2d 367, 371–372 (2003), while the Wisconsin Court of Appeals found a statement more reliable because the witness was *not* in custody and *not* a suspect, see *State v. Bintz,* 2002 WI App. 204, ¶ 13, 257 Wis.2d 177, 187, ¶ 13, 650 N.W.2d 913, 918, ¶ 13. Finally, the Colorado Supreme Court in one case found a statement more reliable because it was given "immediately after" the events at issue, *Farrell, supra,* at 407, while that same court, in another case, found a statement more reliable because two years had elapsed, *Stevens v. People,* 29 P.3d 305, 316 (Colo.2001).
*Crawford v. Washington,* 541 U.S. at 63, 124 S.Ct. 1354.

Q. All right. Did he indicate to you that there was some problems between him and the defendant?

A. Yes.

MR. WILLIS: Objection.

THE COURT: Overruled.

BY MR. HORN:

Q. Did that problem involve money?

A. Yes.

Q. And were you aware of this before August 1st of '96?

MR. WILLIS: Objection.

THE COURT: Overruled.

A. Yes.

Transcript of proceedings ("Tr."), Return, Exh. N, v. 1, pp. 160–61.

The state appellate court reviewing Smith's direct appeal of his second conviction made the following relevant findings of fact and law regarding Smith's claim that admission of Wells' statements violated his right to confront witnesses against him:

> Within this assignment of error, defendant complains that the trial court committed reversible error when it permitted Kenyatta Wells to testify that defendant and Rodgers had a dispute regarding money. In opposition, the state asserts that this witness was present during various meetings between Rodgers and the defendant and that he testified from his personal knowledge of their dispute.

> As an initial matter, we note that the admission and exclusion of evidence is within the broad discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343.

> Evid.R. 602 provides in part that "[a] witness may not testify to a matter unless evidence introduced is sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness."

> " 'Personal knowledge' has been defined as 'knowledge of factual truth which does not depend on outside information or hearsay.' " *Modon v. Cleveland* (1999), Medina App. No. 2945–M, quoting *Wall v. Firelands Radiology, Inc.* (1995), 106 Ohio App.3d 313, 335, 666 N.E.2d 235.

> In this instance, we conclude that the challenged testimony was sufficiently supported by a foundation of personal knowledge in light of Wells' testimony that he was present when Rodgers and Wells discussed business and was aware of problems between the two men. Accord *State v. Tanner*, Muskingum App. No. CT–2003–0005, 2003 Ohio 6866, 2003 WL 22966862 (2003); *State v. Sloan*, Cuyahoga App. No. 79832, 2002–Ohio2669, 2002 WL 1265578 (2002); *State v. Smith*, Montgomery App. No. 18654, 2001–Ohio–1396, 2001 WL 896778 (2001). The trial court did not abuse its discretion in admitting this brief testimony.

*State v. Smith*, 2004 WL 1472081, at *4 (Ohio App. July 1, 2004).

The state appellate court erred in finding that Wells' statement was not hearsay. Regardless of what was within Wells' personal knowledge, the question that the prosecutor asked was *"Did he* [Rodgers] *indicate to you that there was some problems between him and the defendant?"* (Emphasis added.) That question called for Wells to testify regarding what Rodgers had told him. The prosecutor sought Rodgers' answer to that question to demonstrate the truth of the matter, *i.e.* that there was animosity between Rodgers and

Smith. Wells' answer was, therefore, hearsay.

Because the trial court did not regard Wells' response as hearsay, it did not require the prosecution to demonstrate that Rodgers was unavailable to testify.[6] For the same reason, the trial court did not examine whether Rodgers' statements to Wells bore sufficient "indicia of reliability" to warrant admitting the statements through Wells' testimony. Absent these findings, the admission of Wells' testimony violated Smith's Sixth Amendment right to confront the witnesses against him.

Nevertheless, there can be little doubt that the erroneous admission of the testimony at issue was harmless. Wells related the events the evening of the shooting and identified Smith in court as the man who shot him. Tr. at 146–55. Police officer Kennedy B. Jones ("K.Jones") testified that he took the statements of the other occupants of the car Wells was driving when he was shot. According to K. Jones, Rodgers and Chantell Jones ("C.Jones") said that the shooter was a Jamaican named Paul and that he was accompanied by a female named Iris who drove the car in which Paul was riding. Tr. at 111–13. A second police officer also testified that Rodgers and C. Jones had given the name of the shooter as Paul and had said that he was accompanied by a driver named Iris. Tr. at 130–31. A third officer also indicated that Rodgers told him that the shooter's last name was Smith. Tr. at 222–23. The testimony of two forensics experts supported Wells' general account of the

evening's events, although the experts' testimony did not directly address the identity of the shooter. Tr. at 187–207. Given the strength of the prosecution's case, the relatively slight importance of the improper testimony, and the extent of corroborating evidence on material points, Wells' improper testimony that Rodgers had said there were money problems between him and Paul Smith cannot be said to have had a substantial and injurious effect or influence in determining the jury's verdict.

For these reasons the magistrate judge recommends that the court overrule Smith's first ground for relief, that Wells' testimony regarding money trouble between Smith and Rodgers violated Smith's Sixth Amendment right to confront witnesses against him.

B. *Whether Smith's ten-year sentence enhancement as a repeat violent offender denied Smith due process*

Smith contends that the ten-year sentence enhancement he received as a repeat violent offender pursuant to Ohio Rev. Code § 2929.14 (" § 2929.14") violated his Sixth Amendment and Fourteenth Amendment right to due process by virtue of the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 489, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Specifically, Smith argues that § 2929.14[7] impermissibly allows a judge to

---

6. The prosecution offered to provide evidence that it had been unable to locate Rodgers and Wilson. The court did not require the prosecution to do so. Tr. at 237.

7. Smith also contends that sentencing pursuant to Ohio Rev.Code § 2941.145 (" § 2941.145") violated his right to due process because it runs afoul of the holding of

*Apprendi.* He does not, however, support this assertion. Moreover, the three-year sentence Smith received for the firearm specification, the subject of § 2941.145, does not seem on its face to violate the holding in *Apprendi*. Section 2941.145 provides in relevant part:
 (A) Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the

impose a sentence beyond the normal statutory maximum on the basis of findings made by a trial judge alone. Smith also argues that the trial court denied Smith due process by failing to make the findings of fact and law required by the statute and that Smith was denied due process because there was insufficient evidence to support the court's findings.

1. *Whether Smith's sentence pursuant to § 2929.14 violated due process by virtue of the holding in Apprendi*

Smith contends that his sentences for felonious assault and as a repeat violent offender violated due process by virtue of the holding in *Apprendi* because the jury was not permitted to make the findings of fact necessary to give Smith the maximum sentence provided under § 2929.14(A)(2) and the findings of fact necessary to sentence him pursuant to § 2929.14(D)(2)(A). Respondent replies that Smith's sentencing did not violate clearly established Supreme Court holdings.

■ State courts have traditionally been allowed considerable discretion to sentence convicted defendants to "any sentence within the limits prescribed by the legislature." *See Gardner v. Florida*, 430 U.S. 349, 357, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *see also Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Nevertheless, sentencing discretion must be exercised within the boundaries of due process. *Gardner*, 430 U.S. at 358, 97 S.Ct. 1197; *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Even if a sentence falls within legislative limits, the use of such impermissible factors as race or religion, for example, in determining such a sentence violates a defendant's right to due process. *Gardner*, 430 U.S. at 358, 97 S.Ct. 1197; *Zant v. Stephens*, 462 U.S. 862, 885, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

In *Apprendi*, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 489, 120 S.Ct. 2348. The trial court in *Apprendi* had used a judicial finding of fact pursuant to a New Jersey hate-crime statute to double a usual 10-year maximum sentence when the court found that defendant committed the crime " 'with a purpose to intimidate ... because of race, color, gender, handicap, religion, sex-

---

Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form:
"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense)."

The jury specifically found in accord with the specification in the indictment that Smith had a firearm on or about his person or under his control while committing the offense, displayed and brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense. Tr. at 321. Thus, the jury found sufficient facts to allow the court to sentence Smith to three years imprisonment on the firearm specification. There was no obvious violation of *Apprendi*.

ual orientation or ethnicity.'" *Id.* at 468–469, 120 S.Ct. 2348 (quoting N.J. Stat. § 2C:44–3(e)). The Supreme Court found that the sentencing court's judicial finding that Apprendi's purpose in committing the crime was to intimidate the victim on the basis of race violated the Due Process clause of the Fifth Amendment and the guarantees of notice and a jury trial in the Sixth Amendment regarding any fact other than a prior conviction that increases the maximum penalty for a crime. The Court found that any fact that would increase the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt.

The Supreme Court applied the holding in *Apprendi* to death penalty cases in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The Court determined in *Ring* that the constitutional rights of the defendant were violated when, pursuant to Arizona law, the sentencing court imposed a sentence greater than the maximum it could otherwise have imposed by finding that the presence of aggravating factors justified the imposition of the death penalty. The holding in *Ring* overruled *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." *Ring,* 536 U.S. at 609, 122 S.Ct. 2428. After announcing this holding, the Court added the following:

**8.** *Ring's* application of *Apprendi* to death penalty cases does not appear to add anything to the instant case not provided by *Apprendi.*

**9.** In *State v. Foster,* 109 Ohio St.3d 1, 1, 845 N.E.2d 470, 475 (2006), the Ohio Supreme court found, *inter alia,* that § 2929.14(B) and (C), to the extent that they required judicial fact-finding before imposition of a sentence greater than the maximum term authorized

Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," *Apprendi,* 530 U.S., at 494, n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435, the Sixth Amendment requires that they be found by a jury.

\* \* \*

"The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered.... If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it." *Duncan v. Louisiana,* 391 U.S. 145, 155–156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death. We hold that the Sixth Amendment applies to both.

*Ring,* 536 U.S. at 609, 122 S.Ct. 2428.

Smith contends that Ohio's sentencing statutes, on their face and as applied in his case, clearly violate the holding in *Apprendi* and as extended in *Ring.*[8] The core of Ohio's sentencing statutes is to be found at § 2929.14.[9] This provision states in relevant part:

by a jury verdict or admission of the defendant, and § 2929.14(D)(2)(b) violated the holdings in *Apprendi* and *Blakely* and were, therefore, unconstitutional. This does not resolve the instant case, however. For Smith to obtain relief, the violation of the holding in *Apprendi* must have been "clearly established" at the time of his sentencing. 28 U.S.C. § 2254(d)(1).

(A) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(4), (D)(5), (D)(6), or (G) of this section and except in relation to an offense for which a sentence of death or life imprisonment is to be imposed, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following: . . .

(2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years. . . .

(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925 of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

(C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.

(D) . . . (2)(a) If an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender, the court shall impose a prison term from the range of terms authorized for the offense under division (A) of this section that may be the longest term in the range and that shall not be reduced pursuant to section 2929.20, section 2967.193, or any other provision of Chapter 2967 or Chapter 5120. of the Revised Code. If the court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person or that involved substantial permanent incapacity or substantial permanent disfigurement of a person, the court shall impose the longest prison term from the range of terms authorized for the offense under division (A) of this section.

(b) If the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section, the court may impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if the court finds that both of the following apply with respect to the prison terms imposed on the offender pursuant to division (D)(2)(a) of this section and, if applicable, divisions (D)(1) and (3) of this section:

(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

Ohio Rev.Code § 2929.12 (" § 2929.12") provides as follows:

(A) Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (A) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.

(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

(5) The offender shows no genuine remorse for the offense.

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

(4) The offense was committed under circumstances not likely to recur.

(5) The offender shows genuine remorse for the offense.

In sum, an Ohio court may sentence a defendant to 8 years' imprisonment for felonious assault if the defendant is a repeat violent offender and may additionally sentence a defendant to additional time as a repeat violent offender only if the court finds pursuant to the factors at § 2929.12 that the defendant is a likely recidivist and that the crime was unusually serious.

The record is ambiguous regarding the factors the court used in sentencing Smith

to the maximum possible sentence for felonious assault. The transcript shows that the judge considered Smith's record as a repeat offender, consideration of whether any lesser sentence would protect the public from future crime, and factors related to the seriousness of the crime. Regardless of which of these factors the court considered in making its sentencing decision, Smith cannot obtain relief on the ground that the maximum sentence violated his due process rights.

 Smith cannot obtain relief if the court relied on Smith's record as a repeat offender because neither *Apprendi* nor *Blakely* prohibits a court from relying on a prior conviction or facts pleaded to by a defendant in sentencing a defendant to more than the maximum to which the defendant could otherwise be sentenced. At a hearing held on February 14, 2003, Smith stipulated as to the truth of all facts necessary to allow the court to find that Smith was a repeat violent offender due to previous convictions for crimes equivalent to a first or second degree felony that resulted in serious harm to a person. *See* Ohio Rev.Code § 2929.01(DD). A sentence based on stipulations such as Smith's and a previous record does not offend due process.

 Smith also cannot obtain relief if the court relied on considerations of whether any lesser sentence would protect the public from future crime. Section 2929.14(B)(2) allows a court to sentence a defendant to the maximum sentence allowable for a type 2 felony if the court believes that any lesser sentence would not adequately protect the public from future crimes by the defendant or others. *Apprendi* did not prohibit a court from considering the possible deterrent effects of sentences when determining an appropriate sentence within a legislatively allowed range.

 Finally, Smith cannot obtain relief if the court impermissibly relied on judicial findings of fact in determining that any sentence less than the maximum would demean the seriousness of Smith's crime. *Apprendi* held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." But it cannot be said that *Apprendi's* holding was clear as to what was meant by "statutory maximum." The term could be taken to mean "the maximum to which a court may sentence a defendant without additional jury findings" or could be taken to mean "the maximum to which a court may sentence a defendant after additional judicial findings." *Blakely* made clear that the Supreme Court meant the former in *Apprendi,* and the mere fact that the Supreme Court thought the decision in *Blakely* was necessary indicates that courts were unclear as to which meaning of "statutory maximum" was intended. Indeed, *Foster* overturned a string of decisions by the Ohio Supreme Court and lesser courts holding that non-minimum sentences based upon judicial findings of fact did not violate the holding in *Apprendi. See Foster,* 109 Ohio St.3d at 1, 845 N.E.2d at 475. Because the rule that "any fact that increases the penalty for a crime *beyond those facts found by a jury* " was not "clearly established" after *Apprendi* and before *Blakely,* Smith cannot obtain relief if the sentencing court violated that rule in sentencing him to the maximum allowable sentence for felonious assault.

Smith's sentence as a repeat violent offender is another matter, however. Section 2929.14(D)(2)(b) allows an independent sentence for a repeat violent offender only if the court has done each the following: (1) sentenced the defendant to the maximum term allowed under § 2929.14(A); (2) determined that the term imposed is inad-

equate to punish the offender and protect the public because the factors at § 2929.12 indicate a likelihood of recidivism; and (3) determined that the term imposed demeans the seriousness of the crime because factors at § 2929.12 indicate that the defendant's conduct was more serious than conduct normally constituting the offense. As has already been shown, giving Smith the maximum sentence pursuant to § 2929.14(A) did not violate *clearly established* federal law as found in Supreme Court holdings. Arguably, a determination that an additional sentence to reduce the risk of recidivism is also allowable, although the requirement that the court make findings of fact specified at § 2929.12 probably makes this requirement unconstitutional. There is no doubt, however, that a determination that the term already imposed demeans the seriousness of the crime because the factors at § 2929.12 indicate that the crime was more serious than normal is unconstitutional.

To make a determination that the crime was more serious than normal, a judge must find at least one of the following pursuant to § 2929.12(B): (1) the victim's injuries were exacerbated by physical or mental condition or age of the victim; (2) the victim serious physical, psychological, or economic harm; (3) the offender held a public office or position of trust in the community, and the offense related to that office or position; (4) the offender's occupation, elected office, or profession required the offender to prevent the offense or bring persons committing it to justice; (5) the offender's professional reputation or occupation, elected office, or profession facilitated the offense or is likely to influence the conduct of others; (6) the offender's relationship with the victim facilitated the offense; (7) the offender committed the offense for hire or as a part of an organized criminal activity; (8) the offense

was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion; or (9) if the offense involved a family or household member, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children. An additional sentence based on these judicial findings of fact is unequivocally barred by the holding in *Apprendi.* Respondent cannot argue that ambiguity in what is meant by a "maximum sentence" or the traditional deference shown determinations regarding recidivism create any doubt that a sentence based on a judicial finding of one of these factors is unconstitutional. Indeed, factor § 2929.12(B)(8) is nearly identical to the statute overturned by *Apprendi.* That the findings required in the other factors involve facts other than the offender's *mens rea* does not materially distinguish those findings from the findings prohibited by *Apprendi.*

The nine-year sentence given Smith as a repeat violent offender was contrary to clearly established law as found in the holdings of the Supreme Court at the time of Smith's sentencing. For this reason, the magistrate judge recommends that the court grant Smith's second ground for relief as in relates to his claim that his sentence as a repeat violent offender violated clearly established federal law by overturning Smith's nine-year[10] sentence as a repeat violent offender.

2. *Whether Smith's sentence as a repeat violent offender violated his right to due process because the court failed to make the required findings of fact*

Smith argues that the court's failure to make on the record the specific findings

---

**10.** Smith incorrectly argues that the sentence was a ten-year sentence.

required by § 2929.14(D)(2)(b) and § 2929.12 violated Smith's rights to due process. Smith makes no argument and cites no law in support of this assertion. Smith, therefore, fails to carry his burden of proof with regard to this claim in his second ground for relief. For this reason the magistrate judge recommends that the court overrule this portion of Smith's second ground for relief.

### 3. Whether Smith's sentence as a repeat violent offender violated his right to due process because there was insufficient evidence to support the court's findings

Smith's entire argument in support of his contention that his sentence as a repeat violent offender violated his right to due process because there was insufficient evidence to support the court's findings is as follows:

> [I]f the trial judge had engaged [in the analysis required by state law], the trial judge, as a matter of law, would not have been able to make the requisite findings because the evidence in the instant case was legally insufficient to support those findings. Thus, the sentence imposed, being grounded in insufficient evidence, was imposed contrary to the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution. See, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Ford v. Wainwright* (1986), 477 U.S. 399, 428, 106 S.Ct. 2595, 91 L.Ed.2d 335 (O'Connor concurring) (federa, sur process clause obliges states to provide procedural protections corresponding to state-created liberty interests).

Petition at 15 (punctuation in the original). Smith conducts no analysis and does not explain how either *Jackson* or *Ford* relate to his case. Consequently, Smith fails to carry his burden of proof with regard to the claim in his second ground for relief that his sentence as a repeat violent offender violated his right to due process because there was insufficient evidence to support the court's findings. For this reason the magistrate judge recommends that the court overrule this portion of Smith's second ground for relief.

### C. Whether Smith was denied his right to due process and trial by jury when the prosecutor allegedly argued beyond the evidence in closing argument, made personal attacks on defense counsel, and improperly commented on Smith's failure to present evidence at trial.

Smith alleges that the prosecutor violated his rights to due process and trial by jury when the prosecutor allegedly argued beyond the evidence in closing argument, made personal attacks on defense counsel, and improperly commented on Smith's failure to present evidence at trial. Respondent denies that the prosecutor violated Smith's constitutional rights.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted). To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *see also United*

*States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair). This determination must be made by considering the totality of the circumstances of each case. *See Byrd v. Collins*, 209 F.3d 486, 529–30 (6th Cir. 2000).

 Prosecutorial misconduct is subject to harmless error analysis. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997). On federal habeas review, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710.

The state appellate court reviewing Smith's conviction on direct appeal made the following relevant findings of fact and law regarding this ground for relief:

Within this assignment of error, defendant complains that the prosecuting attorney made comments unsupported by the evidence, when he argued that Rodgers had identified the shooter and driver to the police by their first and last names. He further complains that the prosecuting attorney made ad hominum attacks on defendant's trial counsel by suggesting that his job was to raise reasonable doubt. Finally, defendant complains that the prosecuting attorney improperly commented about defendant's failure to present evidence when by arguing [sic] that defendant could have called Rodgers as a witness.

In evaluating these claims, we note that the prosecution is entitled to a certain degree of latitude in summation. *State v. Smith*, 87 Ohio St.3d 424, 2000–Ohio450, 721 N.E.2d 93; *State v. Liberatore* (1982), 69 Ohio St.2d 583, 589, 433 N.E.2d 561, 566. The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883, 885. The key "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87.

With regard to defendant's assertion that the prosecuting attorney improperly commented upon matters not in evidence by arguing that several days after the shooting, Rodgers provided the police with the shooter's and the driver's first and last names, we note that the prosecuting attorney argued that immediately following the shooting, Rodgers told the police that the shooter was "Paul," and gave a description of him, and eight days later told Det. Wheeler that the shooter was Paul Smith but was afraid to make a statement. We further note that Det. Wheeler testified that he initially had only the name "Paul" in connection with this matter, but later, on August 9, 1996, after speaking with Rodgers and Wells, he obtained the name "Paul Smith." The prosecuting attorney therefore did not err in arguing that Rodgers provided this information to police. Indeed, defendant's trial attorney also argued, "the last name was Smith, which was supplied to him by Wheeler—by Bootsy to Wheeler * * *." (Tr. 300). Moreover, because Rodgers was in the vehicle, accompanied Wells to the police station, and provided information, but did not give a written statement, a jury might logically infer that he was afraid to do so. Accordingly, we hold that this remark did not prejudicially affect substantial rights of the accused. Cf. *State v. Calloway* (May 26, 1994), Cuyahoga App. Nos. 65431, 65432,

65433, 1994 WL 236226. This aspect of the assignment of error is without merit.

With regard to the next asserted basis of prosecutorial misconduct, we note that the state argued, " \* \* \* his job, as defense attorney, is to try to show inconsistencies or raise issues that will put doubt in your mind." (Tr. 266). This remark did not prejudicially affect substantial rights of the accused. Cf. *State v. Shepherd*, Cuyahoga App. No. 81926, 2003–Ohio–3356, 2003 WL 21469736 (2003).

Finally, with regard to the comment that defendant did not subpoena Rodgers, the entire comment is as follows:

"Mr. Willis talks a lot about Mr. Rodgers. Just so you know, Mr. Willis has the same subpoena power as does the state. So if you wanted to hear from Mr. Rodgers, he could have subpoenaed him here, too." (Tr. 304).

The Ohio Supreme Court has held that the State is not prevented from commenting upon the failure of the defense to offer evidence in support of its case. *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 490 N.E.2d 906; *State v. Clemons* (1998), 82 Ohio St.3d 438, 452, 696 N.E.2d 1009. As such, the State's comments did not constitute prosecutorial misconduct. Moreover, this was proper rebuttal to defense counsel's argument. *State v. Smith*, 87 Ohio St.3d 424, 2000–Ohio–450, 721 N.E.2d 93. This assignment of error is without merit.

*Smith*, 2004 WL 1472081 at \*8 -\*9.

Smith cites no holding of the Supreme Court on materially identical facts which demonstrates that the prosecutor's alleged errors violated either his due process right to a fair trial or his right to a trial by jury. Moreover, the state appellate court found that (1) the prosecutor's statement that Rodgers had provided the shooter's first and last name was supported by the evidence given in the case; (2) any error in commenting on defense counsel's role did not substantially affect Smith's rights; and (3) the comment regarding Smith's failure to present a defense was proper. Smith cites no relevant law to rebut the state court's finding that the comment regarding Smith's failure to present a defense was proper. Instead, Smith cites *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), for the proposition that the prosecution may not comment on the accused's failure to testify in a case. As the prosecution did not comment on Smith's failure to testify, *Griffin* is irrelevant. The findings by the state court that the prosecutor's statements regarding Rodger's providing Smith's first and last name and that any error in commenting on defense counsel's role did not substantially affect Smith's rights are findings of fact that are presumed correct. Smith must rebut that presumption by clear and convincing evidence. Smith cites no evidence that the appellate court erred in making these findings of fact.

Because Smith fails to establish that the prosecutor's remarks violated his due process right to a fair trial and his right to a jury trial and because he fails to show that any such alleged errors were prejudicial, the magistrate judge recommends that the court overrule Smith's third ground for relief.

## IV

For the reasons given above the magistrate judge recommends that the court (1) grant Smith's petition for a writ of habeas corpus with respect to the claim in his second ground for relief that his nine-year sentence as a repeat offender pursuant to § 2929.14(D)(2) was contrary to clearly established federal law; (2) overturn Smith's nine-year sentence as a repeat violent of-

fender, giving the state the option of a new sentencing trial; and (3) overrule all other assignments of error.

July 20, 2002.